IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN FORD, | |
| Plaintiff, | |
| v. | Case No. 24-cv-66-NJR |
| ANTHONY WILLS, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Allen Ford, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Ford initially filed a Complaint alleging a Fourteenth Amendment due process claim for disciplinary proceedings he participated in while incarcerated at Hill Correctional Center and an Eighth Amendment conditions of confinement claim for the conditions of his cell at Menard Correctional Center (Doc. 1). His due process claim was severed into a new case and transferred to the United States District Court for the Central District of Illinois (Doc. 12, pp. 6-7). *See also Ford v. Little, et al.*, Case No. 24-cv-1358-SPM (Doc. 4). Ford's claim regarding his conditions of confinement while at Menard was dismissed without prejudice for failure to state a claim, but he was granted leave to file an Amended Complaint (Doc. 12, pp. 7-8). In his Amended Complaint (Doc. 15), Ford alleges he experienced unconstitutional

1

conditions of confinement and was denied adequate healthcare, both in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

Ford makes the following allegations: On April 13, 2023, Ford was transferred from Hill Correctional Center to Menard and placed in segregation due to a disciplinary ticket he received while at Hill (Doc. 15, p. 1-2). He was placed in a 10′ x 5′ cell with a steel door (*Id.* at p. 2). Ford made several requests to access the yard but correctional officers informed Ford that he was on "pink tag" and was not allowed access to the yard (*Id.* at pp. 2-3). Specifically, Correctional Officers House and Welgh informed Ford that per Warden Anthony Wills's restrictive housing policies, inmates on "pink tag" could not attend yard (*Id.*).

Ford alleges that he suffered from nerve damage due to previously being shot in the back and face, and lacking access to the yard aggravated his nerve pain (*Id.* at p. 3). He also could not exercise in the small cell, further aggravating his nerve pain (*Id.* at p. 3). Ford remained in restrictive housing for 180 days (*Id.* at p. 8). During his entire stint in segregation, Ford only received 5 ½ hours of outside recreation (*Id.*). Ford believes that

2

because Anthony Wills was the warden, he should have been aware of inmates' physical conditions in restrictive housing (*Id.*).

On July 6, 2023, Ford wrote a grievance about being placed on "pink tag" (*Id.*). He directed his grievance to Warden Wills. Ford never received a response to the grievance. Ford alleges that Warden Wills instructed correctional officers to place inmates in the North 2 Restrictive Housing Unit on "pink tag" in order to prevent the inmates from receiving yard or recreation (*Id.* at pp. 3-4). Ford was later moved to another cell in North 2, but the cell was the same size. Thus, Ford was unable to exercise while housed in North 2 (*Id.* at p. 4). Ford was also denied access to the showers, sometimes up to a week, during his stint in segregation (*Id.* at p. 7).

Due to his increasing nerve pain, Ford submitted numerous sick call requests that went unanswered (*Id.* at p. 3). At some unspecified point, Ford did meet with a John Doe Nurse who informed Ford that he suffered from "psychotic nerve pain" due to lack of movement and exercise (*Id.* at p. 4). The nurse informed Ford that he would be scheduled with a doctor, but Ford never saw a doctor at Menard (*Id.*).

Ford also received smaller portion sizes on his food trays while in restrictive housing (*Id.* at p. 9). As a result of the smaller portions, Ford alleges that he suffered from malnutrition and lost weight (*Id.*). John Doe Doctor failed to provide him with proper medical care. He filed a grievance regarding his medical care while in restrictive housing (*Id.*).

On June 8 2023, while on 1 Gallery, Ford experienced an inmate riot (*Id.* at p. 4). As a result of the riot, his cell was flooded with feces, urine, and other waste (*Id.* at p. 5).

3

Feces and urine also landed near Ford's cell (*Id.*). After the riot, Ford was denied proper cleaning materials and health protection (i.e. gloves, face mask, etc.) (*Id.*). Ford repeatedly stopped a John Doe correctional officer and requested cleaning and personal health protection materials (*Id.*). Further, to avoid the mace being sprayed by officers during the riot, Ford stuck his entire head inside his toilet (*Id.*). After the riot, Ford requested to see the doctor and submitted a medical emergency grievance (*Id.* at pp. 5-6). As chief administrative officer, Anthony Wills reviewed the grievance (*Id.*). Nurse John Doe informed Ford that he was scheduled to see the doctor prior to his release from segregation, but Ford never saw the doctor (*Id.* at p. 6). Although Ford was ultimately able to clean his cell with his own hygiene supplies, he was unable to clean the waste, feces, and urine located outside of his cell bars (*Id.*). The cellhouse was not cleaned until eight days after the riot (*Id.*).

Ford alleges that Anthony Wills is at fault for the conditions Ford faced because he is the chief administrative officer and is required to appoint committee members for the restrictive housing review committee (*Id.* at p. 10). Ford also filed grievances about the "pink tag" process to Wills (*Id.* at p. 3). Ford also alleges that Wills created the "pink tag" procedure that confined individuals to North 2 (*Id.*). He also submitted an emergency grievance regarding the conditions in North 2 after the inmate riot (*Id.* at p. 6). As warden, Wills was also in charge of being aware of the inmates' conditions in his facility (*Id.* at p. 8).

### Preliminary Dismissals

Ford fails to state a claim against John Doe Nurse, John Doe Doctor, and gallery officers House and Welgh. Although he mentions that he requested medical care from an unknown nurse and was scheduled to see an unknown doctor, Ford fails to include them in the list of defendants in the caption of his Amended Complaint. To be considered a party, a defendant must be "specif[ied]…in the caption." Because Ford fails to identify these individuals as defendants, any claim against them is considered **DISMISSED without prejudice**. *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Similarly, Ford alleges that he spoke to correctional officers House and Welgh about his ability to attend the yard and they informed Ford that he had received a "pink tag" (Doc. 15, p. 3). But Ford fails to identify House or Welgh as defendants in the case caption, nor has he alleged that they acted with deliberate indifference to any of his alleged conditions of confinement. Thus, any claim against House and Welgh is also **DISMISSED without prejudice**.

### Discussion

Based on the allegations in the Amended Complaint, the Court designates the following count:

> **Count 1:** Eighth Amendment conditions of confinement claim against Anthony Wills for the conditions Ford experienced in segregation at Menard.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

At this stage, Ford alleges a viable conditions of confinement claim against Warden Wills for the lack of movement he experienced while on "pink tag." Ford specifically alleges that he was placed on "pink tag," a system implemented by Warden Wills, that prevents inmates from leaving their cells for exercise or showers. He alleges that he had no movement beyond his cell and was limited to what exercise he could conduct inside his 10 x 5 cell (*Id*. at pp. 3-4). As a result of the lack of movement, Ford suffered from nerve pain. Ford adequately alleges that Warden Wills was personally involved in the "pink tag" system, labeled Ford as "pink tagged," and knew that Ford was denied time outside of his cell. Thus, to the extent Ford alleges that Warden Wills was deliberately indifferent to Ford's ability to leave his cell for recreation and showers, the Court finds that Ford adequately states a claim in Count 1.

But there are no allegations to suggest that Warden Wills was aware of Ford's conditions after the inmate riot or Ford's need for cleaning supplies. Although Ford alleges there was a riot in the prison and inmates threw feces and urine in the vicinity of Ford's cell, there are no allegations to suggest that Warden Wills was personally aware of the conditions of Ford's cell. Ford alleges that he spoke to unknown correctional

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

officers about his need for cleaning supplies, but nothing in the Amended Complaint indicates that he spoke to Warden Wills (*Id.* at p. 5).

Similarly, Ford alleges that he sought medical care for his injuries after the riot, but he fails to allege that Warden Wills was aware of Ford's need for medical care. He merely alleges that he submitted an emergency grievance about his medical care to Warden Wills, but Wills cannot be liable for simply denying Ford's grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Thus, to the extent that Ford alleges that Warden Wills was deliberately indifferent to his need for cleaning supplies or medical care after the riot, Ford's claims are **DISMISSED without prejudice.**

Finally, there are no allegations to suggest that Warden Wills was aware of the amount of food Ford received while in restrictive housing. There are no allegations to suggest that Ford spoke to Warden Wills about the limited portions served in restrictive housing. Thus, any claim regarding Ford's meal portions is **DISMISSED without prejudice.**

## Disposition

For the reasons stated above, Count 1 shall proceed against Anthony Wills only as it relates to his "pink tag" placement that limited Ford's movement. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendant Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to Wills's place of employment as identified by Ford. If Wills fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Wills, and the Court will require Wills to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Wills can no longer be found at the work address provided by Ford, the employer shall furnish the Clerk with his current work address, or, if not known, his last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant Wills is **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Ford, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless

of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Ford is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** July 24, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve him with a copy of your Amended Complaint. After service has been achieved, the defendant will enter his appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. After the defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**